**STATE FARM FIRE AND CASUALTY COMPANY, a corporation, Plaintiff,**

v.

**Steven M. MARTIN and Peggy D. Martin, individuals, Defendants.**

**Steven M. MARTIN and Peggy D. Martin, individuals, Counter-claimants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, a corporation, Counter-defendants.**

**No. CV 86–6672 (CBM).**

United States District Court, C.D. California.

July 9, 1987.

Memorandum Order Granting Summary Judgment Oct. 20, 1987.

Jeffrey H. Leo, Daniel L. Gardner, Douglas R. Irvine, Parkinson, Wolf, Lazar & Leo, Los Angeles, Cal., for plaintiff.

Paul B. Witmer, Jr., P.C., Santa Ana, Cal., for defendants.

### MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

CONSUELO BLAND MARSHALL, District Judge.

This matter is before the Court on plaintiff State Farm Fire and Casualty Company's motion for summary judgment. A hearing was held on June 1, 1987 before Honorable Consuelo B. Marshall, United States District Judge, presiding. The Court having reviewed the pleadings, moving papers, oppositions, replies, all exhibits presented by the parties, all pertinent authority and having heard the arguments of counsel, hereby issues the following memorandum order.

## I. FACTS

This action is based on denial by plaintiff State Farm of a claim by defendants under their homeowners insurance policy.

Defendants Steven and Peggy Martin purchased the residential property that is the subject of the insurance claim in early January, 1984. On January 4, 1984, defendants purchased a homeowners insurance policy from State Farm insurance. The policy issued was contained in Form Policy 7175.

Sometime between May 5, 1984 and August 6, 1985, defendants noticed cracking and other related problems on their property, including bulging, corrosion and tilting.

On January 4, 1985, the policy was renewed as contained in Form Policy 7185.

On August 6, 1985, defendants submitted a claim to State Farm for cracking and related problems on their property, and on September 4, 1985 they met with Chiquita Ector, State Farm claims representative, in their home, and Ector inspected the premises.

On October 16, 1985, Jim Damm, State Farm claims superintendent sent defendants a "reservation of rights" letter setting forth possible exclusions under the policy.

Sometime in October of 1985, Tim Welch, a senior engineering geologist at the time employed by American Earth Technologies, investigated the cause of damage to defendants' property at the request of State Farm.

In his report to State Farm, dated October 21, 1985, Welch stated the potential causes of distress to be one or more of the following:

1. Settlement of subgrade soil;

2. Expansion of subgrade soil;

3. Sulfate crystalization within the subgrade soil;

4. Sulfate attack to the cement foundations;

5. Poor foundation construction.

State Farm sent a copy of this report to the defendants' attorney on September 15, 1986.

Subsequently, Welch states in his declaration, further tests were conducted and further investigative work done, which led him to conclude that sulfate crystalization was not, in fact, a potential cause of the damage to the Martin's property.

State Farm filed the complaint in this action on October 15, 1986, seeking declaratory relief, including a ruling that the insurance contract does not provide coverage for the losses contained in defendants claim against the insurance policy.

Defendants filed an answer and counterclaim on November 4, 1986. The counterclaims included the following:

1. Refusal to pay under terms of the policy;

2. Breach of implied covenant of good faith and fair dealing;

3. Violation of California Insurance Code Section 530;

4. Bad faith conduct in violation of California Insurance Code Section 790.03(h).

## II. PARTIES' CONTENTIONS

Plaintiff contends that all potential causes of the trauma to the defendants' property were expressly excluded under their insurance policy. Plaintiff specifically cites in its moving papers to Form Policy 7175, section I, at 1(f), 2(b), (c)(3), and 3; and Form Policy 7185 Section I, at 1(f), (h), (i), 2(b), (c)(3), 3(a)(b), and 4(a), (b). These restrictions are essentially the same in both years.

Plaintiff argues that the language contained in these sections of the policy is explicit and lists earth movement, underground water, contamination and deterioration as causative events which are expressly excluded. Plaintiff further argues that the contract is unambiguous in its explanation that resulting damage which would not have occurred in the absence of one of these excluded events is also excluded from coverage, no matter whether or not other concurrent causes exist. Plaintiff contends that under California caselaw it has an

absolute right to limit coverage under an insurance policy and that because defendants had a copy of the policy at all times herein, they are charged with knowledge of the terms of that policy. Moreover, plaintiff explains that defendants did not pay for an "all-risk" policy; to require plaintiff State Farm to pay for excluded perils would, in turn, require the company to raise the premimums on all such restrictive policies in order to stay financially sound; this would harm the group of all insureds.

Plaintiff contends that because it did not unreasonably delay in investigating defendants' insurance claim, and because there was a reasonable basis for denial of plaintiff's claim, it is not in violation of California Insurance Code § 790.03.

Plaintiff asserts that in drafting the insurance policy in question, the company did not disregard or violate California Insurance Code § 530. Finally, plaintiff contends that all counterclaims are time barred by the one-year limitations period imposed by the policy.

Defendants, in opposition, contend that based on California law, the policy must be construed narrowly against the insurer and so as, if semantically possible, to provide indemnity to the insured.

Moreover, defendants contend that this is a situation where coverage should exist pursuant to California Insurance Code § 530 because the earth movement and other excluded causes were concurrent with a non-excluded cause of damage—sulfate crystalization.

Defendants claim that summary judgment against their counter-claims based on the one-year contractual limitations period is improper because theere is a triable issue of fact as to what losses are affected by the limitation, when the limitations period commenced, and whether State Farm is estopped to assert or has waived the limitations defense.

## III. DISCUSSION

### A. *Ambiguity*

■ Defendants cite *Safeco Insurance Co. v. Guyton,* 471 F.Supp. 1126 (C.D.Cal.

1979) for the rule of strict construction against insurers, i.e., the proposition that "[i]f any ambiguity or uncertainty exists an insurnce policy is construed strictly against the insurer and most liberally in favor of the insured." *Safeco,* 471 F.Supp. at 1129. However, what plaintiff fails to note is that the case goes on to explain that the rule

> ... is subject to an important limitation, ... it is applicable only when the policy actually presents such uncertainty, ambiguity, inconsistence or doubt. In the absence thereof, the courts have no alternative but to give effect to the contract of insurance as executed by the parties. *Accordingly, when the terms of the policy are plain and explicit the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. Safeco,* 1471 F.Supp. at 1130.

In *Safeco,* the Court, in fact, found that there was no coverage. Moreover, the policy involved in *Safeco* was what is termed an "all-risk" policy; its coverage was more broad, in general, than that under the policy currently at issue.

The language of the policy herein is explicit as to exclusions. The Court must give full effect to the policy as written.

Defendants have presented no evidence to dispute plaintiff's allegations and supporting declarations that defendants had timely received copies of the reservation of rights letter, detailing exclusions, following submission of their claim. Nor have defendants made allegations or provided any evidence that representations were ever made by plaintiff that the policy purchased would be an all-risk policy.

### B. *Coverage*

■ The language of this policy form is unambiguous as to the sections limiting coverage. In Form 7175, effective from January 1984 to January 1985, the policy specifically states in "Section I," "Loss not insured" at 1(f) that there is no coverage for loss "consisting of, or directly and immediately caused by, one or more of the following:

> f. wear and tear; marring; ... deterioration; ... contamination; ... settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roof, or ceiling; ..." (Ector Decl., Exh. 12 at 0023).

Moreover, the policy specifically states that it does not insure for any loss that would not have occurred in the absence of certain events, including earth movement and water damage (Section I, 2(b)f, (c), "regardless of ... any other causes, or whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." (*Id.*)

Defendants, in opposition, cite *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963), for the proposition that this language is violative of California Insurance Code § 530. However, in *Sabella* the insurer attempted to rely on California Insurance Code § 532, alone, to argue that because one cause or "peril" was excluded, the loss would not have occurred in the absence of that peril, the loss is automatically exempted, even if another covered cause directly led to the loss. The Court in *Sabella* was focusing on interpretation of Cal.Ins.Code § 530, and held that the insurer could not rely on section 532 alone, but must read that section in conjunction with section 530, which provides:

> An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.

The court in *Sabella* was addressing the construction and applicability of section 532 of the statute. Here, the insurance policy itself expressly and explicitly includes in its language a provision which states that for certain causes, the "but for" argument raised by the insurer in *Sabella* will apply to limit coverage. While the court in *Sabella* would not extend the statute so as to *imply* such restrictions on coverage of concurrent causes, there is nothing in the law denying the insurer the right to include such language as a term of the contract itself. The insurer, here State Farm, had

an absolute right to limit the coverage contained in the language of the policy itself. "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Continental Casualty Co. v. Phoenix Construction Co.,* 46 Cal.2d 423, 432, 296 P.2d 801 (1956).

The only evidence provided by defendants in opposition to the motion for summary judgemnt are portions of the transcript of the deposition of Tim Welch, the geotechnical expert who investigated the premises for State Farm and who supplied a declaration in support of State Farm's motion. These portions of the deposition only show that sulfates were considered at the time of the intital investigation to have been a potential contributing factor. This does not impeach or contradict the declaration of Welch, who stated that sulfate crystalization was, at first, listed as a potential cause. Moreover, this evidence in no way negates the fact that *even if* sulfate crystalization was a potential cause, the broad exclusionary language of the contract would disallow coverage. Defendants have provided no independent evidence of their own which in any way negates the evidence presented by plaintiff that excluded perils, including earth movement, settling and deterioration, were the primary causes of the damage.

In *Celotex v. Myrtle Nell Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court clarified the standard to be used in analyzing motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. The Supreme Court held that the language of Rule 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", assuming that party has had adequate time for discovery. 106 S.Ct. at 2552–53. The Supreme Court explained its reasoning by stating that "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 2552.

Here, defendants' complete failure to provide any evidence in support of its dispute as to the causes of damage to their home, coupled with the Court's duty to give effect to the unambiguous contractual language, necessitates that the Court grant summary judgment in favor of plaintiff on these issues.

## C. *Counterclaims*

Based on the foregoing analysis, including *inter alia,* the fact that the language of the insurance policy is unambiguous as to exclusions and the fact that defendants have failed in their burden of proof to provide any evidence to negate the alleged fact that earth movement was proximate cause of the damage to defendants' dwelling, the Court finds that under the *Celotex* standard defendants have failed to provide any evidence that State Farm's failure to pay on defendants' claim was a breach of the policy or that in drafting the language of the policy in question State Farm breached California Insurance Code § 530.

### 1. *Bad Faith; California Insurance Code § 790.03(h)*

California Insurance Code § 790.03 provides a list of descriptions of prohibited actions by insurance companies; commission of these acts is statutorily defined as unfair and deceptive act or practice. Section (h) provides a list of fifteen activities considered to be unfair claims settlement practices.

Defendants have provided the Court with no evidence that State Farm has violated any of these provisions or has otherwise acted in bad faith.

### 2. *Duty of Good Faith and Fair Dealing*

In *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal Rptr. 480, 510 P.2d 1032 (1973), the California Supreme Court explained when a cause of action for breach of duty of good faith and fair dealing would lie.

That responsibility [the duty of good faith and fair dealing] is not the requirement mandated by the terms of the poli-

cy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith discharging its contractual responsibilities. Where in doing so, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. *Id.* at 574, 108 Cal.Rptr. 480, 510 P.2d 1032.

Defendants have provided no evidence that State Fair breached its duty in the process of investigating and ultimately denying defendants' claim. Based on the evidence and the allegations before the Court, there is no indication that the investigation by State Farm was inadequate or substandard or that State Farm unduly delayed in the investigation process.

### 3. *Contractual Limitations Period*

In support of its motion for summary judgment, plaintiff State Farm has argued that defendants' counterclaims are untimely under the one-year limitations period imposed by the language of the insurance policy. Defendants essentially raise an equitable argument that plaintiff is estopped from raising this defense because it did not inform defendants that their claim was denied until after the one-year period had, based on plaintiff's argument, already passed. Defendants argue, moreover, that this creates a question of fact as to whether, under the policy, the limitations period should be tolled, based on equitable considerations. The Court does not address this issue because summary judgment is hereby granted against the counterclaims based on the unambiguous language of the contract, irrespective of whether the counterclaims were timely.

For the foregoing reasons, summary judgment is GRANTED in favor of plaintiff and against defendants.