**FRONTIER FOUNDATIONS, INC.,**
**Plaintiff and Appellant,**

v.

**LAYTON CONSTRUCTION CO., INC.,**
**Defendant and Appellant,**

and

**Morton–Thiokol Corporation, Thiokol**
**Chemical Corporation, Defendants**
**and Appellees,**

and

**Reliance Insurance Company,**
**Defendants.**

**No. 900121–CA.**

Court of Appeals of Utah.

Sept. 26, 1991.

J. David Nelson (argued) and Robert D. Dahle, Maddox, Nelson & Snuffer, Murray, for appellant.

Warren Patten, W. Cullen Battle (argued), and Diane Banks, Fabian & Clendenin, Salt Lake City, for appellee, Morton–Thiokol Corp.

Before BENCH, GREENWOOD and JACKSON, JJ.

OPINION

GREENWOOD, Judge:

Frontier Foundations, Inc. and Layton Construction Co., Inc., (collectively Frontier/Layton), appeal from an order of the trial court which: (1) grants Thiokol Chemical Corporation's (Thiokol) motion for summary judgment dismissing Frontier/Layton's claims for additional compensation under a construction contract, and (2) denies Frontier/Layton's motion for partial summary judgment on such claims.[1] We affirm.

---

1. The parties stipulated that Frontier/Layton's defamation claim was resolved before the trial court and that the judgment on appeal is a final appealable judgment under Utah R.App.P. 3.

## BACKGROUND

Layton Construction Co. (Layton) was the successful bidder to act as general contractor on a building project for Thiokol, to be constructed at Thiokol's facility in Box Elder County, Utah. Layton utilized plans and specifications provided by Thiokol in preparing its bid. Layton and Thiokol executed a Purchase Order/Contract (construction contract) on July 17, 1986, which incorporated the specifications provided earlier to Layton. On August 7, 1986 Frontier Foundations, Inc. (Frontier) executed a subcontract with Layton, whereby Frontier agreed to perform the portion of the construction contract requiring driving interlocked steel sheet piles approximately forty-nine feet into the earth. Frontier based its bid, in part, upon boring logs Thiokol had included in its bid specifications. The boring logs were reports of soil sample analyses at various depths.

The bid specifications described the boring logs to be from "a representative area near the [project] site" but cautioned that they were "not part of the contract documents," and were "not a warrant of subsurface conditions." The bid specifications included a map indicating a 1400 foot distance between the location of the soil tested and the project site. The boring logs accurately indicated there was no gravel or cobble at the site tested, but Frontier encountered gravel and cobble at the project site during actual construction. Because of the unanticipated gravel and cobble, Frontier alleged it completed its portion of the project at three times its projected expense and twice the projected time. Frontier's delay resulted in increased costs for other subcontractors and for Layton, and consequent increased costs for the total project.

Frontier sued Layton seeking additional compensation for extra work performed because of the unanticipated subsurface conditions. Layton cross-claimed against Thiokol for Layton's liability to Frontier because of the unexpected subsurface conditions. Frontier subsequently settled with Layton and acquired Layton's claims against Thiokol.

Frontier/Layton filed a joint motion for partial summary judgment granting recovery of extra expenses on the basis that Thiokol had misrepresented a material fact. Thiokol filed a cross motion for summary judgment dismissing Frontier/Layton's claims for extra compensation, alleging: (1) there was no affirmative representation of subsurface conditions at the project site; and (2) Frontier/Layton unreasonably relied upon the soil boring logs.

The trial court granted Thiokol's motion for summary judgment and denied Frontier/Layton's motion for partial summary judgment.

## ISSUES

Frontier/Layton contends the trial court erred in denying its motion for partial summary judgment because it was entitled to rely on the boring logs as indicating the general quality of soil to be encountered at the project site since the boring logs were presented as being from "a representative area near the site." Thiokol contends, to the contrary, that its disclaimer and map showing the source of the boring log samples precluded Frontier/Layton from justifiably relying on the boring logs.

## STANDARD OF REVIEW

Summary judgment shall be rendered "if ... there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). On appeal of a summary judgment, we view the facts and all reasonable inferences in a light most favorable to the party opposing the motion. *Blue Cross and Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989). On review of a trial court's interpretation of a contract, we note that "[w]hether a contract is ambiguous is a question of law." *Village Inn Apartments v. State Farm Fire and Casualty Co.*, 790 P.2d 581, 582 (Utah App. 1990) (citing *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). Further, "[i]f a contract is determined to be unambiguous, its interpretation is also a question of law." *Village Inn*, 790 P.2d at 582.

We accord no deference on appeal on questions of law, but review for correctness. *Christensen v. Munns*, 812 P.2d 69, 71 (Utah App.1991).

## ANALYSIS

We first consider whether the trial court correctly construed the construction contract.

> In interpreting a contract, we determine what the parties intended by examining the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole. The cardinal rule is to give effect to the intentions of the parties and, if possible, to glean those intentions from the contract itself. Additionally, a contract should be interpreted so as to harmonize all of its terms and provisions, and all of its term should be given effect if possible.

*G.G.A., Inc. v. Leventis*, 773 P.2d 841, 845 (Utah App.1989) (citations omitted). The specifications incorporated into the construction contract include the following provisions:

### GENERAL REQUIREMENTS

**1.11  SITE INSPECTION**

The contractor shall make every effort to familiarize himself with the prevailing work conditions. Any failure by the contractor to do so shall not relieve him from the responsibility of performing the work without additional cost to Morton Thiokol.

.    .    .    .    .

### SUBSURFACE CONDITIONS

**1.01  DESCRIPTION**

A. Soil borings of the representative area near the building site have been taken by Chen and Associates, Salt Lake City, Utah.

B. A copy of the boring logs is included.

C. The soil report was obtained only for the engineer's use in the design and is not a part of the contract documents. The log of borings is provided for contractor's information but is not a warrant of subsurface conditions.

The trial court found that while the boring logs are presented as being from "a representative area near the site" specifically identified on the accompanying map, the disclaimers that the logs were not part of the contract documents and "not a warrant of subsurface conditions," specifically limited Layton's use of the logs. The contract, viewed as a whole and giving effect to all its provisions, presents no ambiguity. There is no dispute that the information is accurate; nor is there any suggestion that Thiokol had other information regarding subsurface conditions at the project site. Layton contends only that Thiokol's inclusion of the boring logs in the contract documents justifies Layton's reliance upon them. Any such reliance does not take into account the disclaimer language, thus failing to give meaning to and harmonize all of the contractual provisions.

In most instances, parties are bound by the terms of their contract, which defines their relationship and their respective rights and obligations. Layton contracted to perform the construction project for the stated price. "[I]f one agrees to do a thing possible of performance 'he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered.' "  *Wunderlich v. State of California*, 65 Cal.2d 777, 56 Cal. Rptr. 473, 476, 423 P.2d 545, 548 (1967) (quoting *United States v. Spearin*, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918) (cited with approval in *L.A. Young Sons Constr. Co. v. County of Tooele*, 575 P.2d 1034, 1037 (Utah 1978). Layton is precluded by the contract from receiving extra compensation for expenses caused by soil conditions differing from those in the drill logs provided prior to bidding.

Layton argues further, however, that interpretation of this contract should be controlled by the Utah Supreme Court holdings in *Jack B. Parson Constr. Co. v. State*, 725 P.2d 614 (Utah 1986) and *Thorn Constr. Co. v. Dept. of Transp.*, 598 P.2d 365 (Utah 1979). In *Parson*, the Utah Department of Transportation (UDOT) included outdated and misleading information in its bid specifications, while having more recent and accurate information in its possession which was contrary to the information provided prospective bidders. The con-

tract included a general disclaimer. The court followed the reasoning in *Thorn,* and held that a general disclaimer could not operate to require a bidder to investigate the truthfulness of specific affirmative representations. *Parson,* 725 P.2d at 617. Similarly, *Thorn* involved UDOT's inaccurate positive representation that certain construction materials were acceptable. *Thorn* distinguished its facts and decision from cases where there were no misrepresentations, accurate information was provided, and specific disclaimers were included. *Thorn,* 598 P.2d at 369 (citing *Wunderlich,* 56 Cal.Rptr. at 4117, 423 P.2d at 549; *L.A. Young,* 575 P.2d at 1034). Layton claims no such inaccurate representations or that Thiokol possessed better or contrary information. Indeed, the boring logs were accurate as to the area from which they were taken, the area was explicitly identified, and Layton was cautioned not to rely on the logs. Because there were no positive misrepresentations and there was a specific disclaimer, *Parson* and *Thorn* are inapplicable.[2]

In sum, the trial court correctly determined that the construction contract, read as a whole, unambiguously provides that Layton could not rely on the boring logs as representing the soil to be encountered at the construction site and, therefore Layton is not entitled to damages incurred because of differing soil conditions. We therefore affirm the trial court's grant of Thiokol's motion for summary judgment dismissing Frontier/Layton's claims for additional compensation and denying Frontier/Layton's motion for partial summary judgment on such claims. Since we hold the contract precludes reliance on the boring logs, we do not reach the issue of reasonable reliance.

JACKSON, J., concurs.

BENCH, P.J., dissents.

---

**2.** In addition, this is a dispute involving a private contract, while *Parson* and *Thorn* involve public contract issues and policy considerations.